UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---

ARCH SPECIALTY INSURANCE
COMPANY,

                      Plaintiff,

                *v.*

APCO INDUSTRIES, INC.,

                      Defendant.

**REPORT & RECOMMENDATION**
18-CV-4041-ENV-SJB

---

**BULSARA, United States Magistrate Judge:**

      Plaintiff Arch Specialty Insurance Company ("Arch Specialty" or "Plaintiff"), commenced this action on July 13, 2018, against Defendant Apco Industries, Inc. ("Apco"), alleging breach of an insurance contract, unjust enrichment, and account stated, and seeking $114,836.00 in damages, together with taxes and fees, prejudgment interest, attorney's fees, and costs. (Compl. dated July 13, 2018 ("Compl."), Dkt. No. 1). Apco failed to answer or otherwise respond to the Complaint. On November 2, 2018, the Clerk of Court entered a default against Apco. (Certificate of Default dated Nov. 2, 2018 ("Certificate of Default"), Dkt. No. 10). On October 1, 2019, Arch Specialty moved for a default judgment. (Mot. for Default J. Against Def. Apco Industries, Inc. dated Oct. 1, 2019 ("Mot."), Dkt. No. 21). The Honorable Eric N. Vitaliano referred the motion to the undersigned on December 10, 2019, for a report and recommendation. (Order Referring Mot. dated Dec. 10, 2019).

      For the reasons outlined below, the Court respectfully recommends that the motion for default judgment be granted in part and damages, interest, and costs be awarded as detailed herein.

1

FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Plaintiff Arch Specialty is an insurance company incorporated in Missouri, with its principal place of business in Jersey City, New Jersey. (Compl. ¶ 1). Defendant Apco is a corporation incorporated in New York and with its principal place of business in Sunnyside, New York. (*Id.* ¶ 2). Arch Specialty issued Commercial General Liability Policy number AGL0026370-00 to Apco (the "Policy"), effective for the period June 3, 2015 to June 3, 2016. (*Id.* ¶ 6; Decl. of Nicholas Civitano in Supp. of Mot. dated Feb. 28, 2019 ("Civitano Decl."), Dkt. No. 23, ¶ 5; Arch Specialty Insurance Company Policy number AGL0026370-00 ("Policy"), attached as Ex. A to Civitano Decl., Dkt. No. 23, at 1 (Common Policy Declarations at 1)). Under the Policy, Arch Specialty provided insurance coverage to Apco in exchange for Apco's payment of an insurance premium. (Compl. ¶ 7; Civitano Decl. ¶ 6). According to the Policy's terms and conditions, Apco "is responsible for the payment of all premiums." (Policy at 31 (Common Policy Conditions § E(1))). And Arch Specialty

> will compute all premiums for this Coverage Part in accordance with [its] rules and rates.
>
> Premium shown in this Coverage Part as advance premium is a deposit premium only. At the close of each audit period [Arch Specialty] will compute the earned premium for that period and send notice to the first Named Insured. The due date for audit and retrospective premiums is the date shown as the due date on the bill. If the sum of the advance and audit premiums paid for the policy period is greater than the earned premium, [Arch Specialty] will return the excess to the first Named Insured.

(*Id.* at 46 (Commercial General Liability Coverage Form § 5(a)–(b))). Further,

> [t]he premium designated in this policy as "advance premium" is a minimum and deposit premium, which shall be credited to the amount of the earned premium due at the end of the policy period.
>
> At the close of each period (or part thereof terminating with the end of the policy period) designated in the Declarations as the audit period, the earned

2

>premium including any premium adjustments made by endorsement to this policy during the policy period shall be computed for such period and upon notice thereof to the Named Insured, shall become due and payable.

(*Id.* at 33 (Annual Minimum and Deposit Premium Endorsement)). In other words, Apco was obligated to first pay a deposit on the insurance premium, calculated in on the basis of an insurance broker's estimate. Then, at the conclusion of the coverage period, the insurer conducts an audit of the insured's actual exposure during the period and calculates the premium. The insured is then liable for any difference between the deposit and premium (the "Additional Premium").

Following an audit, Arch Specialty calculated that the Additional Premium equaled $114,836.00. (Compl. ¶ 11; Civitano Decl. ¶ 12). Arch Specialty invoiced Apco for the Additional Premium on November 21, 2016. (Civitano Decl. ¶ 13; Premium Invoice dated Nov. 21, 2016 ("Premium Invoice"), attached as Ex. C to Civitano Decl., Dkt. No. 23). This payment was due on January 17, 2017. (Civitano Decl. ¶ 16; Premium Invoice). Apco has not paid the Additional Premium. (Civitano Decl. ¶ 16).

On July 13, 2018, Arch Specialty commenced this action by filing a summons and Complaint. (Compl.). The Complaint alleges breach of contract, unjust enrichment, and account stated in violation of New York law. (*Id.* ¶¶ 6–17 (breach of contract), 19–21 (unjust enrichment), 23–25 (account stated)).

Apco was served with a summons and Complaint on August 1, 2018, via personal service on a manager authorized to accept service. (Aff. of Service dated Aug. 7, 2018 ("Executed Summons"), Dkt. No. 6). Apco failed to respond, and at Arch Specialty's request, (Req. for Certificate of Default Against Def. Apco Industries, Inc. dated Oct. 29, 2018, Dkt. No. 9), the Clerk of Court issued a certificate of default as to Apco, (Certificate of Default). On April 2, 2019, Arch Specialty filed a motion for default

3

judgment. (Mot. for Default J. Against Def. Apco Industries, Inc. dated Apr. 2, 2019, Dkt. No. 12). On August 30, 2019, following an Order of this Court, (Order dated Aug. 26, 2019), Arch Specialty indicated that it would withdraw the motion and refile it, (Letter dated Aug. 30, 2019, Dkt. No. 20, at 1). The initial motion was denied as moot. (Order dated Sept. 3, 2019). On October 1, 2019, Arch Specialty filed this second motion for default judgment. (Mot.). The motion and its supporting papers were served on Apco at its last known business address. (Aff. of Service dated Oct. 1, 2019 ("Default J. Service"), Dkt. No. 25).

Arch Specialty's motion seeks judgment against Apco in the amount of $119,729.76, which consists of: (1) $114,836.00, the Additional Premium; (2) $4,363.77 in taxes and fees; and (3) $529.99 in costs. (Decl. of J. Gregory Lahr, Esq. in Supp. of Mot. dated Oct. 1, 2019 ("Lahr Decl."), Dkt. 22, ¶¶ 15–17; Civitano Decl. ¶¶ 12, 15). It also seeks an unspecified amount in attorney's fees. (Civitano Decl. ¶ 18; Pl. Arch Specialty Insurance Company's Mem. of Law in Supp. of Its Mot. dated Oct. 1, 2019 ("Mem."), Dkt. No. 24, at 10). For the reasons stated below, the motion should be granted in part.

DISCUSSION

I.    <u>Entry of Default Judgment</u>

"Rule 55 of the Federal Rules of Civil Procedure establishes a two-step process for a plaintiff to obtain a default judgment." *See Shariff v. Beach 90th St. Realty Corp.*, No. 11-CV-2551, 2013 WL 6835157, at *3 (E.D.N.Y. Dec. 20, 2013) (adopting report and recommendation). First, "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default." Fed. R. Civ. P. 55(a). Second, after

4

default has been entered, and the defendant fails to appear or move to set aside the default under Rule 55(c), the Court may, on plaintiff's motion, enter a default judgment against that defendant. *Id.* r. 55(b)(2). The Clerk entered a default against Apco on November 2, 2018. (Certificate of Default).

The next question, before reaching liability or damages, is whether Apco's conduct is sufficient to warrant entry of a default judgment. In determining whether to enter a default judgment, the Court is guided by the same factors that apply to a motion to set aside entry of a default. *See Enron Oil Corp. v. Diakuhara*, 10 F.3d 90, 96 (2d Cir. 1993). "These widely accepted factors are: (1) whether the default was willful; (2) whether setting aside the default would prejudice the adversary; and (3) whether a meritorious defense is presented." *Id.*; *see also Farmers New Century Ins. Co. v. Peruggia*, No. 18-CV-1965, 2020 WL 3964715, at *2 (E.D.N.Y. June 22, 2020), *report and recommendation adopted*, 2020 WL 3960519 (July 13, 2020).

First, Apco's failure to respond to the Complaint demonstrates its default was willful. *See, e.g.*, *Indymac Bank v. Nat'l Settlement Agency, Inc.*, No. 07-CV-6865, 2007 WL 4468652, at *1 (S.D.N.Y. Dec. 20, 2007) (finding the defendants' non-appearance and failure to respond "indicate willful conduct" and granting plaintiff's default judgment against them). Apco had sufficient notice of the present litigation, as a copy of the summons and Complaint were personally delivered to the manager of Apco, who stated she was authorized to accept service, on August 1, 2018. (Executed Summons). The motion for default judgment and supporting papers were also served via mail to Apco's last known business address. (Default J. Service). Notwithstanding this notice and service, Apco did not respond to the Complaint, did not appear, and has not in any way attempted to defend itself.

5

As to the second factor, Arch Specialty would be prejudiced if the motion for default judgment were denied because "[w]ithout the entry of a default judgment, Plaintiff[ ] would be unable to recover for the claims adequately set forth in the Complaint." *Sola Franchise Corp. v. Solo Salon Studios Inc.*, No. 14-CV-946, 2015 WL 1299259, at *15 (E.D.N.Y. Mar. 23, 2015) (adopting report and recommendation); *Trs. of the Empire State Carpenters Annuity, Apprenticeship, Lab. Mgmt. Coop., Pension & Welfare Funds v. Lynnview Constr. Corp.*, No. 12-CV-5644, 2013 WL 4852312, at *7 (E.D.N.Y. Sept. 10, 2013) (adopting report and recommendation).

Third, the Court cannot conclude there is any meritorious defense to Plaintiff's allegations because Apco did not appear and no defense has been presented to the Court. *E.g.*, *United States v. Hemberger*, No. 11-CV-2241, 2012 WL 1657192, at *2 (E.D.N.Y. May 7, 2012); *Indymac Bank*, 2007 WL 4468652, at *1.

All three factors weigh in favor of the entry of default judgment. The Court now turns to the liability imposed, damages, and other relief to be awarded.

II.   Choice of Law

The Policy does not have a choice-of-law provision. (Mem. at 6; *see also* Policy). In its absence, Arch Specialty asks the Court to apply New York law and notes that the Defendant is incorporated in New York and its principal place of business is in New York. (Mem. at 6).

A federal court sitting in diversity applies the choice-of-law rules of the forum state. *Klaxon v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941); *Arch Specialty Ins. Co. v. Sealmax Glass Sys., Inc.*, No. 16-CV-1409, 2017 WL 11505249, at *3 (E.D.N.Y. Feb. 15, 2017), *report and recommendation adopted*, Order (May 9, 2017); *see also Dukes Bridge, LLC v. Sec. Life of Denver Ins. Co.*, No. 10-CV-5491, 2020 WL 1908557, at *33

6

(E.D.N.Y. Apr. 17, 2020).  The Court has diversity jurisdiction over this dispute pursuant to 28 U.S.C. § 1332.  (Compl. ¶¶ 1–2, 4).  Thus, New York choice-of-law rules are applicable.

Under those rules, in disputes arising from insurance contracts, courts apply the substantive law of the "jurisdiction 'which the parties understood was to be the principal location of the insured risk . . . unless with respect to the particular issue, some other [jurisdiction] has a more significant relationship.'" *Jimenez v. Monadnock Constr., Inc.*, 109 A.D.3d 514, 516–17 (2d Dep't 2013) (alterations in original) (quoting *In re Midland Ins. Co.*, 16 N.Y.3d 536, 554 (2011)).  Where the insured's operations are "nationwide . . . , the principal location of the insured risk should be deemed to be the state where [it] is incorporated and has its principal place of business, from which it negotiated the special terms of the Policy, and where the Policy presumably was delivered to." *Steadfast Ins. Co. v. Sentinel Real Estate Corp.*, 283 A.D.2d 44, 50 (1st Dep't 2001).

Here, the insured is an insulation contractor.  (Policy at 4 (Commercial General Liability Declarations)).  The Policy covers, among other things, "bodily injury" and "property damage" that occurs in "the 'coverage territory'" during the policy period.  (*Id.* at 35 (Commercial General Liability Coverage Form § 1(1)(b))).  The "coverage territory" includes the United States, its territories, Canada, certain international waters and airspace, and "[a]ll other parts of the world" in certain situations.  (*Id.* at 47 (Commercial General Liability Coverage Form § 5(4))).  Apco is incorporated in New York, (Compl. ¶ 2), its principal place of business is in New York, (*id.*), and the Policy was mailed to an address in Sunnyside, New York, (Policy at 1 (Common Policy Declarations at 1)).  In light of this broad coverage territory, the principal location of the

7

insured risk is where Apco is incorporated, has its principal place of business, and where the Policy was delivered, namely New York. Thus, the insured risk is deemed to be in New York, and the Court concludes that New York law applies to this dispute.[1]

III.    Liability

In deciding a motion for default judgment, a court "is required to accept all of the [plaintiff]'s factual allegations as true and draw all reasonable inferences in its favor." *Finkel v. Romanowicz*, 577 F.3d 79, 84 (2d Cir. 2009). A party's default is deemed an admission of all well-pleaded allegations of liability. *See Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.*, 973 F.2d 155, 158 (2d. Cir. 1992); *Morales v. B & M Gen. Renovation Inc.*, No. 14-CV-7290, 2016 WL 1266624, at *2 (E.D.N.Y. Mar. 9, 2016), *report and recommendation adopted*, 2016 WL 1258482 (Mar. 29, 2016).

The court must then determine "whether the unchallenged facts constitute a legitimate cause of action." 10A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2688.1 (2020) ("Once the default is established, defendant has no further standing to contest the factual allegations of plaintiff's claim for relief. Even after default, however, it remains for the court to consider whether the unchallenged facts constitute a legitimate cause of action, since a party in default does not admit conclusions of law."); *Labarbera v. ASTC Labs. Inc.*, 752 F. Supp. 2d 263, 270 (E.D.N.Y. 2010) (adopting report and recommendation).

---

[1] Further, Arch Specialty exclusively cites New York law. (Mem. at 6); *e.g.*, *Core-Mark Midcontinent, Inc. v. Tri-State Candy Wholesale, Inc.*, No. 14-CV-3694, 2018 U.S. Dist. LEXIS 151207, at *22–23 (E.D.N.Y. Aug. 31, 2018) (recommending the application of New York law to a contract dispute where "[t]he parties exclusively cite New York law" and the Court found no "public policy why New York law should not apply").

Arch Specialty has asserted a valid cause of action for breach of contract. Under New York law, the elements of breach of contract are "existence of a contract, the plaintiff's performance pursuant to the contract, the defendant's breach of its contractual obligations, and damages resulting from the breach." *Fernandez v. Abatayo*, 172 A.D.3d 821, 822 (2d Dep't 2019) (quoting *Legum v. Russo*, 133 A.D.3d 638, 639 (2d Dep't 2015)); *accord Orlander v. Staples, Inc.*, 802 F.3d 289, 294 (2d Cir. 2015). An insured's failure to pay premiums due under an insurance contract constitutes a breach. *E.g.*, *Liberty Mut. Ins. Co. v. Fast Lane Car Serv., Inc.*, 681 F.Supp.2d 340, 347 (E.D.N.Y. 2010) (granting a motion for default judgment where insurance company alleged that the insured failed to pay "adjusted premium" following an audit) (adopting report and recommendation).

Arch Specialty has alleged the existence of a contract, the Policy. (Compl. ¶¶ 6–7). It has also alleged that it has performed under the Policy, (*id.* ¶¶ 7–8), and that Apco failed to pay the Additional Premium, which constitutes a breach of the Policy, (*id.* ¶¶ 7, 12). Finally, it has also alleged damages, in the amount of the Additional Premium and certain taxes and fees, flowing from the breach. (*Id.* ¶¶ 12, 14, 17). These allegations, taken as true on default, are sufficient to establish Apco's breach of contract liability.

However, Arch Specialty has not established, and cannot establish, Apco's liability for unjust enrichment or account stated because they are duplicative claims. "[C]laims are duplicative of one another if they 'arise from the same facts . . . and do not allege distinct damages.'" *NetJets Aviation, Inc. v. LHC Commc'ns, LLC*, 537 F.3d 168, 175 (2d Cir. 2008) (second alteration in original) (quoting *Sitar v. Sitar*, 50 A.D.3d 667, 670 (2d Dep't 2008)). Unjust enrichment and account stated claims that "arise from the same facts and seek the same relief" as a claim for breach of contract must therefore be

9

dismissed. *E.g.*, *Sealmax Glass*, 2017 WL 11505249, at *4 (collecting cases); *see also Fernandez*, 172 A.D.3d at 822 ("The cause of action alleging unjust enrichment is precluded by the parties' written contract governing the same subject matter."); *Hagman v. Swenson*, 149 A.D.3d 1, 7 (1st Dep't 2017) (affirming the dismissal of an account stated claim where it was "simply 'another means to attempt to collect under a disputed contract'" (quoting *Martin H. Bauman Assocs., Inc. v. H & M Int'l Transp., Inc.*, 171 A.D.2d 479, 485 (1st Dep't 1991)). Arch Specialty's unjust enrichment and account stated claims arise from the same facts as its breach of contract claim: Arch Specialty provided insurance coverage to Apco pursuant to an insurance contract, and Apco refused to pay according to the contract's terms. (Compl. ¶¶ 6–17 (breach of contract), 19–21 (unjust enrichment), 23–25 (account stated)). Arch Specialty also seeks the same relief under each claim. (*Id.* ¶¶ 17, 21, 23). Thus, they are duplicative claims, and the Court respectfully recommends that they be dismissed with prejudice. *E.g.*, *Arch Specialty Ins. Co. v. Kajavi Corp.*, No. 18-CV-4043, 2019 WL 3719461, at *3 (E.D.N.Y. July 11, 2019) ("A defendant 'cannot be found liable on both an account stated claim . . . and a breach of contract claim . . . in connection with the same allegations of a failure to pay monies owed.'" (alterations in original) (quoting *Wachtel & Masyr LLP v. Brand Progression LLC*, No. 11-CV-7398, 2012 WL 523621, at *1 (S.D.N.Y. Feb. 1, 2012))), *report and recommendation adopted*, 2019 WL 3717441 (Aug. 7, 2019); *Sealmax Glass Sys., Inc.*, 2017 WL 11505249, at *6 (recommending duplicative unjust enrichment and account stated claims be dismissed with prejudice).

IV. <u>Damages, Interest, and Costs</u>

"While a party's default is deemed to constitute a concession of all well-pleaded allegations of liability, it is not considered an admission of damages." *Greyhound*

10

*Exhibitgroup,* 973 F.2d at 158. "[A]lthough the default establishes a defendant's liability, unless the amount of damages is certain, the court is required to make an independent determination of the sum to be awarded." *Griffiths v. Francillon*, No. 10-CV-3101, 2012 WL 1341077, at *1 (E.D.N.Y. Jan. 30, 2012) (quoting *Ann Taylor, Inc. v. Interstate Motor Carrier, Inc.*, No 03-CV-7502, 2004 WL 2029908, at *3 (S.D.N.Y. Sept. 13, 2004)), *report and recommendation adopted*, 2012 WL 1354481 (Apr. 13, 2012). "The court must conduct an inquiry to ascertain the amount of damages with reasonable certainty." *Joe Hand Promotions, Inc. v. El Norteno Rest. Corp.*, No. 06-CV-1878, 2007 WL 2891016, at *2 (E.D.N.Y. Sept. 28, 2007) (adopting report and recommendation) (citing *Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp.*, 109 F.3d 105, 111 (2d Cir. 1992)). "Where, on a damages inquest, a plaintiff fails to demonstrate its damages to a reasonable certainty, the court should decline to award any damages even though liability has been established through default." *Lenard v. Design Studio*, 889 F. Supp. 2d 518, 527 (S.D.N.Y. 2012) (adopting report and recommendation) (collecting cases).

    A.    <u>Damages</u>

Arch Specialty seeks $119,199.77 in damages, which consists of (1) the amount of the Additional Premium, $114,836.00; and (2) a New York Surplus Lines Tax equal to 3.6% of the Additional Premium and a New York State Stamping Fee equal to 0.2% of the Additional Premium (together, the "Taxes and Fees"), which equals $4,363.77. (Compl. ¶¶ 11–12, 14, 17; Civitano Decl. ¶¶ 12, 15–16). "It is a fundamental principle of contract law that an award of damages should place a plaintiff in the same position as that party would have been if the contract had not been breached." *Rich-Haven Motor Sales, Inc. v. Nat'l Bank*, 163 A.D.2d 288, 289 (2d Dep't 1990); *see also Kajavi Corp.*,

11

2019 WL 3719461, at *3. Still, "damages may not be merely speculative, possible or imaginary," they "must be reasonably certain and directly traceable to the breach, not remote or the result of other intervening causes." *Wenger v. Alidad*, 265 A.D.2d 322, 323–24 (2d Dep't 1999) (quoting *Kenford Co. v. County of Erie*, 67 N.Y.2d 257, 261 (1986)).

Arch Specialty has established that, if Apco had not breached, it would have been paid the Additional Premium and Taxes and Fees. Arch Specialty has also established the amounts with the requisite certainty. With respect to the Additional Premium, it submitted documentation of its audit of Apco and a copy of the invoice it provided to Apco. (Civitano Decl. ¶¶ 12–13; Audit Report dated Nov. 11, 2016, attached as Ex. B to Civitano Decl., Dkt. No. 23; Premium Invoice). Both reflect an Additional Premium of $114,836.00. (Audit Endorsement, attached as Ex. B to Civitano Decl., Dkt. No. 23, at 1; Premium Invoice). And with respect to the Taxes and Fees, the Court has independently confirmed that they total $4,363.77.[2]

Thus, the Court respectfully recommends that Arch Specialty be awarded $119,199.77 in damages.

B. <u>Prejudgment Interest</u>

Arch Specialty seeks prejudgment interest on its damage award dating from January 17, 2017, to the date of entry of final judgment. (Lehr Decl. ¶ 17; Compl. ¶ 17). Under CPLR section 5001 ("Interest to verdict, report or decision"), parties are entitled to recover interest "upon a sum awarded because of a breach of performance of a

---

[2] As noted above, the New York Surplus Lines Tax equals 3.6% of the Additional Premium and the New York State Stamping Fee equals 0.2% of the Additional Premium. The Additional Premium is $114,836.00, and 3.8% of $114,836.00 is $4,363.77.

contract." N.Y. C.P.L.R. § 5001(a).  That "[i]nterest shall be computed from the earliest ascertainable date the cause of action existed."  *Id.* § 5001(b); *Brushton-Moira Cent. Sch. Dist. v. Fred H. Thomas Assocs., P.C.*, 91 N.Y.2d 256, 261–62 (1998) ("Damages are intended to return the parties to the point at which the breach arose and to place the nonbreaching party in as good a position as it would have been had the contract been performed.  Thus, damages for breach of contract are ordinarily ascertained as of the date of the breach." (citations omitted)).  "The award of interest reflects a recognition of the principle that damages are properly ascertained as of the date of the breach and a recognition that there may be a time lag between the accrual of a plaintiff's cause of action and the resulting damage sustained and actual payment by defendant."  *Brushton-Moira Cent. Sch. Dist.*, 91 N.Y.2d at 262.  As such, interest accrues through the date of decision.  N.Y. C.P.L.R. § 5001(c).  In addition, the non-breaching party is also entitled to interest on the total award, including the accrued interest, through the date of entry of final judgment.  *Id.* § 5002 ("Interest from verdict, report or decision to judgment").  The statutory interest rate is nine percent per year.  *Id.* § 5004.

As discussed above, Arch Specialty has established Apco's breach of contract.  It has also established that the earliest date of that breach is January 17, 2017, the date the Additional Premium became due.  (Civitano Decl. ¶ 16; Premium Invoice ("Due Date: 1/17/2017")); *see, e.g.*, *Kajavi Corp.*, 2019 WL 3719461, at *3.  Thus, it is respectfully recommended that Arch Specialty be awarded interest of $29.39 per day[3] beginning January 17, 2017, until the date of the Court's final decision resolving any objections to this Report and Recommendation.  It is further recommended that Arch Specialty be

---

[3] $119,199.77 multiplied by nine percent divided by 365 days equals $29.39 in statutory interest per day.

awarded interest, at nine percent per annum, on the total award, inclusive of accrued interests and costs, through the date final judgment is entered in a total amount to be calculated by the Clerk of Court.

    C.    <u>Attorney's Fees</u>

Arch Specialty seeks an unspecified amount in attorney's fees. (Mem. at 10). "Under New York law, attorneys' fees are generally 'the ordinary incidents of litigation and may not be awarded to the prevailing party unless authorized by agreement between the parties, statute, or court rule.'" *Arch Specialty Ins. Co. v. L&L Interior Contracting Servs. Corp.*, No. 18-CV-4175, 2019 WL 5394502, at \*1 (E.D.N.Y. Oct. 22, 2019) (quoting *Oscar Gruss & Son, Inc. v. Hollander*, 337 F.3d 186, 199 (2d Cir. 2003)). Arch Specialty has not identified any provision in the Policy that provides for either party to recover attorney's fees, and the Court's review of the agreement revealed no such provision. (*See* Policy). Thus, the Court respectfully recommends that this request be denied.

    D.    <u>Costs</u>

Arch Specialty seeks reimbursement for costs consisting of $400 in court filing fees and $129.99 in service of process fees. (*See* Lahr Decl. ¶ 16; Mem. at 9). Under Rule 54(d)(1) of the Federal Rules of Civil Procedure, a prevailing party is entitled to recover certain taxable costs. These include filing fees, 28 U.S.C. § 1920(1), and reasonable service of process fees, *Master Grp. Glob. Co. v. Toner.Com Inc.*, No. 19-CV-6648, 2020 WL 5260581, at \*15 (E.D.N.Y. Aug. 10, 2020), *report and recommendation adopted*, 2020 WL 5259057 (Sept. 3, 2020).

Filing fees are recoverable without supporting documentation if verified by the docket. *E.g.*, *Shalto v. Bay of Bengal Kabob Corp.*, No. 12-CV-920, 2013 WL 867420, at

14

\*2 (E.D.N.Y. Mar. 7, 2013) (adopting a report and recommendation in part); *Philpot v. Music Times LLC*, No. 16-CV-1277, 2017 WL 9538900, at \*11 (S.D.N.Y. Mar. 29, 2017) (stating that the filing fee is "a fact of which the Court can take judicial notice"), *report and recommendation adopted*, 2017 WL 1906902 (May 9, 2017).  The docket indicates the $400 filing fee was paid.  (Dkt. No. 1).  Therefore, although Arch Specialty did not submit a receipt, the filing fee should be awarded.

Process server fees are also recoverable, but they must be supported by documentation.  *See Martinez v. Alimentos Saludables Corp.*, No. 16-CV-1997, 2017 WL 5033650, at \*29 (E.D.N.Y. Sept. 22, 2017) (recommending that the plaintiffs not be awarded process server fees absent supporting documentation and noting that "failure to provide adequate documentation of costs incurred will limit, or even defeat, recovery"), *report and recommendation adopted*, 2017 U.S. Dist. LEXIS 174714 (Oct. 18, 2017); *Sheldon v. Plot Com.*, No. 15-CV-5885, 2016 WL 5107072, at \*20 (E.D.N.Y. Aug. 26, 2016) (recommending the costs for serving defendant "be denied due to lack of adequate documentation"), *report and recommendation adopted*, 2016 WL 5107058 (Sept. 19, 2016).  With its motion, Arch Specialty provided an invoice for a process server fee of $129.99, (Invoice dated Aug. 14, 2018, attached as Ex. D to Lahr Decl., Dkt. No. 22, at 1), and indicated that this fee was paid (Lahr Decl. ¶ 16).  This is sufficient for Arch Specialty to recover process server fees.  *See, e.g.*, *L&L Interior Contracting Services Corp.*, 2019 WL 5394502, at \*1 (awarding $529.99 in costs to Arch Specialty based on invoices).

Therefore, the Court respectfully recommends an award of $529.99 in costs.

CONCLUSION

For the reasons stated, it is respectfully recommended that Arch Specialty's motion for a default judgment be granted in part and that judgment be entered against Apco as follows:

- $119,199.77 in damages
- $29.39 per day in interest from January 17, 2017, until the date of the Court's decision on this Report and Recommendation;
- $529.99 in costs; and
- Interest, at a rate of nine percent per annum and as calculated by the Clerk of Court, on the total award through the date of entry of final judgment.

That is, the Court recommends a total award of $119,729.76, plus interest of $29.39 per day from January 17, 2017, through the entry of any decision on this Report and Recommendation, plus interest at nine percent per annum on the total award through entry of final judgment. The Court recommends that the request for attorney's fees be denied.

Any objections to the Report and Recommendation above must be filed with the Clerk of the Court within 14 days of receipt of this report. Failure to file objections within the specified time waives the right to appeal any judgment or order entered by the District Court in reliance on this Report and Recommendation. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2); *see Caidor v. Onondaga County*, 517 F.3d 601, 604 (2d Cir. 2008) ("[F]ailure to object timely to a magistrate [judge's] report operates as a waiver of any further judicial review of the magistrate [judge's] decision.").

Arch Specialty is directed to serve a copy of this Report and Recommendation on Apco and file proof of such service on the record by October 13, 2020.

SO ORDERED.

*/s/ Sanket J. Bulsara* October 5, 2020
SANKET J. BULSARA
United States Magistrate Judge

Brooklyn, New York